UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AILERON INVESTMENT
MANAGEMENT, LLC,

      Plaintiff,
v.                              Case No. 8:21-cv-108-VMC-CPT

LIVE OAK BANKING COMPANY
d/b/a LIVE OAK BANK,

      Defendant.
_____/

## ORDER

This matter comes before the Court upon consideration of Defendant Live Oak Banking Company d/b/a Live Oak Bank's Partial Motion to Dismiss Amended Complaint (Doc. # 11), filed on February 1, 2021. Plaintiff Aileron Investment Management, LLC, responded on February 22, 2021. (Doc. # 18). For the reasons set forth below, the Motion is granted.

**I.   Background**

This case arose out of Aileron Investment and Live Oak Bank's business relationship. Aileron Investment originated and sold a number of mortgage loans to Live Oak Bank related to certain construction projects. (Id. at ¶ 7). In return for these loans, Live Oak Bank promised to pay Aileron Investment "a pre-negotiated loan premium." (Id.). However, instead of paying a $231,291 premium allegedly owed to Aileron

1

Investment, Live Oak Bank paid it to Silver Hawk Loan Services, LLC. (Id. at ¶ 8). Aileron Investment then sued Silver Hawk and its owners "for misappropriation of corporate opportunities[,] among other things." (Id. at ¶ 9). In response to that suit, Live Oak Bank notified Aileron Investment "that it would temporarily retain earned loan premiums pending resolution of the [d]ispute between Silver Hawk and [Aileron Investment] regarding entitlement to the earned loan premiums." (Id. at ¶ 10). Although the dispute between Silver Hawk and Aileron Investment has since been resolved, Live Oak Bank still refuses to pay Aileron a number of its earned loan premiums. (Id. at ¶¶ 11-13).

Aileron Investment initiated this lawsuit in state court on November 25, 2020. (Doc. # 1-1). Thereafter, on January 13, 2021, Live Oak Bank removed the case to this Court on the basis of diversity jurisdiction. (Doc. # 1). Aileron Investment then filed an amended complaint on January 18, 2021. (Doc. # 5). The amended complaint includes the following claims against Live Oak Bank: conversion (Count I), breach of fiduciary duty (Count II), breach of contract (Counts III and VI), negligence (Count IV), unjust enrichment (Count V), and account stated (Count VII). (Id.).

On February 1, 2021, Live Oak Bank moved to dismiss

Counts I and II of the amended complaint. (Doc. # 11). Aileron Investment responded (Doc. # 18), and the Motion is now ripe for review.

II. **Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual

3

allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

Live Oak Bank moves to dismiss Counts I and II, Aileron Investment's claims for conversion and breach of fiduciary duty. (Doc. # 11). The Court will address Live Oak Bank's arguments as to each of these counts in turn.

### A. Conversion

First, Live Oak Bank moves to dismiss Count I, Aileron Investment's claim for conversion, maintaining that it is not adequately pled. (Doc. # 11 at 5). Specifically, Live Oak Bank argues that the conversion claim fails because (1) "there are no facts supporting an inference that the premiums are a specific and identifiable fund," and (2) it alleges a mere contractual dispute. (Id. at 6-10). Aileron Investment responds that its conversion claim is adequately pled because the money is capable of identification and that this is "more than a garden variety contract dispute." (Doc. # 18 at 6-15).

The parties have not agreed upon whether Florida or North Carolina law applies to the instant dispute by virtue of a choice of law clause that might be included in one of the parties' contracts. (Doc. # 11 at 5 n.3; Doc. # 18 at 6 n.2).

4

However, they concede that the application of either state's law does not materially change the Court's analysis of the instant Motion. (Doc. # 11 at 5 n.3; Doc. # 18 at 6 n.2).

To state a claim for conversion under both Florida and North Carolina law, the plaintiff must sufficiently plead the following elements: "(1) an act of dominion wrongfully asserted; (2) over another's property; [that is] (3) inconsistent with his ownership therein." Salerno v. Fla. S. Coll., 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) (citation omitted); see Stockcar Stocks Advisors, L.L.C. v. 40/86 Advisors, Inc., No. 5:04-CV-31-V, 2005 WL 8175057, at *7 (W.D.N.C. Apr. 7, 2005) ("'Conversion' is defined as: 1) the unauthorized assumption and exercise of the right of ownership; 2) over the goods or personal property; 3) of another; 4) to the exclusion of the rights of the true owner." (citing Est. of Graham v. Morrison, 607 S.E.2d 295, 302 (N.C. Ct. App. 2005))).

When the claim is for conversion of money, the plaintiff must show that "specific and identifiable money is involved in the alleged offense." Lahtinen v. Liberty Int'l Fin. Servs., Inc., No. 13-61766-CIV, 2014 WL 351999, at *5 (S.D. Fla. Jan. 31, 2014) (citing United States v. Bailey, 288 F. Supp. 2d 1261, 1264-65 (M.D. Fla. 2003), aff'd, 419 F.3d 1208

(11th Cir. 2005)); accord Swift Beef Co. v. Alex Lee, Inc., No. 5:17-cv-176, 2018 WL 792071, at *3 (W.D.N.C. Feb. 8, 2018) ("When conversion is based on money, it must be identifiable and described as a specific chattel.").

Under Florida law, "[m]oney is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." Tambourine Comercio Internacional SA v. Solowsky, 312 F. App'x 263, 272 (11th Cir. 2009) (citation omitted). Thus, "there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified." Gasparini v. Pordomingo, 972 So.2d 1053, 1056 (Fla. 3d DCA 2008) (citation omitted); see also In re Mouttet, 493 B.R. 640, 662 (Bankr. S.D. Fla. 2013) ("Money cannot be converted unless the money is a specifically identifiable fund such as an escrow account, a bag of gold coins, or the like." (citation omitted)). Substantially the same requirements apply under North Carolina law. See Alderman v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002) ("In order to be 'identified and describe[d] as a specific chattel,' the general rule is that the money must be segregated from other funds or kept in

a separate bank account and not commingled with the alleged convertor's other funds." (citation omitted)).

Here, Aileron Investment alleges that it had "an immediate right to possess" the loan premiums in question, and that despite demanding payment, Live Oak Bank continued to "wrongfully assert control and dominion" over those premiums. (Doc. # 5 at ¶¶ 16-17). Aileron Investment further avers that those premiums "represent specific and identifiable sums of money." (Id. at ¶ 18). In the body of the complaint, Aileron Investment specifies the sums that it maintains are owed by Live Oak Bank, and which construction projects those premiums relate to:

a. Shree Sai in the amount of $348,750;

b. Fairfield Inn Wesley Chapel in the amount of $156,675;

c. Hyatt Place Wesley Chapel in the amount of $183,000[;] and

d. AB Hospitality in the amount of $164,475.

(Id. at ¶ 11). Aileron Investment also notes two other sums it maintains are owed by Live Oak Bank: $136,300 for Parkland ALF, and $288,000 for Beauford Hospitality. (Id. at ¶ 13).

Although these represent concrete sums, Aileron Investment does not sufficiently allege that they are specific and identifiable because it does not claim that the

7

premiums had to be segregated, kept in a separate account, or in a trust or escrow account. See Gasparini, 972 So.2d at 1055-56 ("Here, the parties did not contemplate that International Trading would keep the $300,000 in a separate account, nor was International Trading obligated to hold the funds that it received from Vitala, S.A. in a trust or escrow account. At the time that International Trading received the funds, it had every right to do with them as it pleased. Accordingly, as a matter of law, there was no conversion."); see also Greenberg v. Pike Elec. Corp., No. 8:14-cv-795-VMC-TBM, 2015 WL 477370, at *2 (M.D. Fla. Feb. 5, 2015) ("The fact that the amount is certain does not make [it] an 'identifiable fund.'" (citation omitted)). Indeed, there is no allegation in the amended complaint that Live Oak Bank was not free to do with these premiums as it pleased.

Aileron Investment cites to Variety Wholesalers, Inc. v. Salem Logistics Traffic Services, LLC, 723 S.E.2d 744 (N.C. 2012), for the proposition that money need not be in a separate account to be specifically identifiable. (Doc. # 18 at 10). Although there are different ways in which money can be rendered sufficiently identifiable to state a conversion claim, the amended complaint offers no support for the conclusory allegation that the funds in question are

8

identifiable. Additionally, Variety Wholesalers is distinguishable because it involved the electronic transfer of money between parties. Variety Wholesalers, 723 S.E. 2d at 751. There, the North Carolina Supreme Court held that "funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." Id. at 750-51. However, there are no facts in the amended complaint supporting an inference that the specific premiums were ever transferred – let alone electronically – or that there was a specific source from which the funds derived or a destination to which they would be sent. (Doc. # 5).

Accordingly, Aileron Investment has failed to sufficiently allege that the money converted was specific and identifiable. See Walker v. Figarola, 59 So.3d 188, 190 (Fla. 3d DCA 2011) ("[T]he parties did not contemplate that Figarola would keep the $25,000 loan in a separate account or hold the funds in a trust or escrow account. There is no allegation that the Walkers in any way directed how the money would be used by Figarola, and the second amended complaint clearly reflects no such intent. Thus, it is clear that the Walkers' complaint failed to state a cause of action for conversion."); see also Yelverton v. Yelverton Farms, Ltd., No. 5:14-CV-365-

FL, 2015 WL 847393, at *12 (E.D.N.C. Feb. 26, 2015) ("So far as plaintiff alleges a conversion of his own $700,000 monetary investment in the facilities, nothing in the complaint indicates that the money invested is capable of being identified and described as a specific chattel. Accordingly, plaintiff's claim for conversion of the Production Contract must be dismissed for failure to state a claim." (internal quotation marks and citations omitted)). Thus, the Motion is granted as to Count I, which is dismissed without prejudice.

### B. Breach of Fiduciary Duty

Next, Live Oak Bank moves to dismiss Count II, Aileron Investment's claim for breach of fiduciary duty. (Doc. # 11 at 11). Live Oak Bank argues that the amended complaint fails to plead such a claim because Aileron Investment cannot demonstrate that Live Oak Bank "owed it any fiduciary duties in the parties' arm's-length relationship." (Id.). Aileron Investment responds that Live Oak Bank's fiduciary duty was implied when "Live Oak [Bank] advised [Aileron Investment] that it would hold the earned loan premiums until the dispute between Silver Hawk and [Aileron Investment] was resolved." (Doc. # 18 at 17). Aileron Investment posits that at that point, Live Oak Bank "became an escrow agent." (Id.).

To state a claim for breach of fiduciary duty, the

plaintiff must sufficiently plead: "(1) that a fiduciary duty exists, (2) that the defendant breached this duty, and (3) that the breach of this duty is the proximate cause of the plaintiff's damages." Gault v. SRI Surgical Express, Inc., No. 8:12-cv-1389-VMC-TGW, 2012 WL 5199581, at *2 (M.D. Fla. Oct. 22, 2012) (citing Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002)); accord Sykes v. Health Network Sols., Inc., 828 S.E.2d 467, 475 (N.C. 2019) ("To establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff."). "[A] fiduciary relationship must exist to create a fiduciary duty." In re KGC Homeowners, Inc., No. 16-01062-5-JNC, 2017 WL 3405509, at *4 (Bankr. E.D.N.C. Aug. 8, 2017).

"Florida law describes a fiduciary relationship as one of 'trust and confidence,' that is, 'where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused.'" Allen v. First Unum Life Ins. Co., No. 2:18-cv-69-JES-NPM, 2020 WL 6203454, at *4 (M.D. Fla. Oct. 22, 2020) (quoting Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., 842 So.2d 204, 207-08

11

(Fla. 3d DCA 2003)). "Fiduciary relationships may be implied in law and such relationships are premised upon the special factual situation surrounding the transaction and the relationship of the parties." Susan Fixel, 842 So.2d at 207 (internal quotation marks and citation omitted). "Florida law requires 'special circumstances' to convert a normal business relationship into a fiduciary relationship." Allen, 2020 WL 6203454, at *4. "[A] party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party." SLM Fin. Corp. v. Castellano, No. 2:11-cv-JES-SPC, 2012 WL 717858, at *2 (M.D. Fla. Mar. 6, 2012) (citation omitted). "In an arm['s] length transaction[,] however, there is no duty imposed on either party to act for the benefit or protection of the other party[.]" Lanz v. Resol. Tr. Corp., 764 F. Supp. 176, 179 (S.D. Fla. 1991).

Similar "special circumstances" are required under North Carolina law. See Sykes, 828 S.E.2d at 475-76 ("A fiduciary relationship has been broadly defined . . . as one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith with due regard to the interests of the one reposing confidence." (internal quotation marks and citations omitted)). Under

North Carolina law, "even when parties to an arm['s]-length transaction have reposed confidence in each other, no fiduciary duty arises unless one party thoroughly dominates the other." Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., --- F. Supp. 3d ----, 2020 WL 7220686, at *11 (M.D.N.C. Dec. 4, 2020).

In the amended complaint, Aileron Investment alleges that Live Oak Bank owed it a fiduciary duty when Live Oak Bank agreed or decided to retain the premiums pending resolution of the dispute between Aileron Investment and Silver Hawk. (Doc. # 5 at ¶ 21). Aileron maintains that this retention of premiums evidences that Live Oak Bank "accept[ed] a relationship of trust and confidence." (Id.).

Although Aileron Investment argues for the first time in its response to the instant Motion that Live Oak Bank acted as an escrow holder of the premiums, there are no facts supporting such an allegation in the amended complaint. (Doc. # 18 at 18). Rather, the amended complaint states only that Live Oak Bank advised Aileron "that it would temporarily retain earned loan premiums pending resolution of the [d]ispute." (Doc. # 5 at ¶ 10). This does not imply the creation of any duty beyond the parties' contractual relationship. See Oginsky v. Paragon Props. of Costa Rica

13

LLC, 784 F. Supp. 2d 1353, 1375 (S.D. Fla. 2011) ("To establish a binding escrow, 'there must be an instrument embodying conditions mutually beneficial to both parties, agreed to by both parties, and it must be communicated to and deposited with a third party." (internal quotation marks and citation omitted)). Nowhere in the amended complaint does Aileron Investment allege that Live Oak Bank acted as an escrow agent, nor does it allege any facts supporting such an inference. (Doc. # 5).

And, there are no facts supporting an inference that Live Oak Bank dominated or held influence over Aileron Investment, as required by North Carolina law. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 348 (4th Cir. 1998) ("Only when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen. By all lights, Meineke franchisees are independent, sophisticated, if sometimes small, businessmen who dealt with Meineke at arm['s] length and pursued their own business interests." (citation omitted)).

Because simply not paying out or "holding" these premiums pending resolution of Aileron Investment and Silver

14

Hawk's dispute implies no special circumstance aside from Aileron Investment and Live Oak Bank's contractual relationship, Count II does not sufficiently allege the existence of a fiduciary duty. See Sallah v. BGT Consulting, LLC, 16-81483-CIV-MARRA, 2017 WL 2833455, at *7-8 (S.D. Fla. 2017) ("Simply stating that OM Global 'placed its trust and confidence' in BGT is more conclusory than factual, and merely reiterates a formulaic recitation of criminal elements that need to be described before the Court takes the extraordinary step of transforming a non-fiduciary arm['s]-length relationship into a relationship with fiduciary responsibilities."); see also In re KGC Homeowners, 2017 WL 3405509, at *4 ("[T]he Complaint contains conclusory statements aimed at establishing the existence of a fiduciary duty owed to Plaintiff by Defendant that fail to convince the court that there was domination and influence such to create a fiduciary duty in fact or in law. Consequently, the court finds that the claim of breach of fiduciary duty fails to meet the standard required to defeat a 12(b)(6) motion."). Accordingly, the Motion is granted as to Count II, which is dismissed without prejudice.

Given that Counts I and II have been dismissed without prejudice, the Court grants Aileron Investment's request for

leave to amend. (Doc. # 18 at 19).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Live Oak Banking Company's Partial Motion to Dismiss Amended Complaint is **GRANTED.**

(2) Counts I and II of the amended complaint are **DISMISSED** without prejudice.

(3) Plaintiff Aileron Investment Management, LLC, may file a second amended complaint by **April 19, 2021.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of April, 2021.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE